UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRADY PHARES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:14-cv-01190-SEB-TAB |
| | ) | |
| MANHEIM REMARKETING, INC., | ) | |
| MANHEIM INVESTMENTS, INC., | ) | |
| MANHEIM, INC., | ) | |
| COX ENTERPRISES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT**

This cause is before the Court on Defendants' Motion for Summary Judgment [Docket No. 42] filed on July 27, 2015. Plaintiff Brady Phares ("Phares") has brought this action against Defendants Manheim Remarketing, Inc., Manheim Investments, Inc., Manheim, Inc. and Cox Enterprises, Inc. (collectively "Manheim") alleging that the negligence of Manheim's agent, Kevin Wineman ("Wineman"), caused an automobile accident that resulted in permanent injuries to Plaintiff. For the reasons detailed below, we **DENY** Defendants' Motion for Summary Judgment.[1]

---

[1] On October 23, 2015, this case was consolidated for purposes of discovery and pretrial proceedings with *Collins v. Manheim Remarketing, Inc.*, 1:14-cv-00056-SEB-TAB. Although they are separate causes, the two cases are based on identical facts, and Defendants raise largely the same arguments in their motions for summary judgment in each of the pending actions. As a result, the factual background and much of the legal analysis in this order mirrors our order in the *Collins* litigation. Defendants have added Katrina Collins as a third alleged intervening and superseding cause in this action. We address Defendants' arguments here and in the companion case.

1

## Factual Background[2]

Manheim is a vehicle auction company that owns and operates an automobile auction business in Indianapolis, Indiana. As part of its business, Manheim acquires and sells salvage vehicles from rental car companies which have previously been involved in automobile accidents. On July 10, 2012, Manheim sold a Nissan Versa as a salvage vehicle to Burkhart Automotive, Inc. ("Burkhart") through Burkhart's agent and president, Ken Burkhart.

Prior to the sale, Manheim's employee, Kevin Wineman, had effected a repair of the vehicle by reattaching the Versa's bumper. Wineman's duties with Manheim included preparing salvaged vehicles for auction by making various aesthetic improvements to them. Wineman never ordered replacement parts for the salvaged vehicles he readied for auction; rather, he utilized only the parts that had arrived with the vehicles. Wineman did not seek permission to reattach the bumper before doing so nor did he inform Manheim that he had performed that task. Manheim's paperwork thus failed to note that the Versa's bumper had been reattached prior to sale. Wineman testified that in reattaching the Versa's bumper, he used either zip ties or bumper clips, but could not recall which.

---

[2] Plaintiff's response brief did not include a section clearly designated "Statement of Material Facts in Dispute," pursuant to Local Rule 56-1(b). Instead, Plaintiff's brief included a section titled "Statement of Facts and Law," which begins with a statement of facts, then transitions to legal argument without benefit of a separate heading. Defendants argue that as a result of this confusing organization, we should strike his entire response and admit Defendants' evidence as uncontroverted. District Courts are granted wide discretion in deciding whether to apply local rules strictly or to overlook minor transgressions. *See Waldridge v. Am. Hoechst Corp.*, 24 F3d 918, 923 (7th Cir. 1994). Despite Plaintiff's formatting deficiencies in his brief, it contains sufficient detail to put the court and the opposing parties on notice of the facts that are in dispute. Accordingly, we deny Defendants' motion to strike Plaintiff's response.

2

Mr. Burkhart retrieved the Versa he had purchased from Manheim's Indianapolis auction facility on July 20, 2012. When Mr. Burkhart arrived at Manheim's facility, he loaded the Versa onto his flatbed tow truck without requiring any assistance from any employee or agent of Manheim.  Mr. Burkhart testified that the Versa "was pretty bad wrecked" when he picked it up from Manheim. Upon inspecting the vehicle before loading it onto the flatbed, Mr. Burkhart noticed that both the windshield and the battery were loose, so he strapped down the windshield and removed the battery and placed it inside the vehicle. Mr. Burkhart testified that he had checked the rear bumper before loading the Versa onto the truck and it seemed secure, though he lacked any knowledge at the time that the bumper had previously been separated from the vehicle and that it had been reattached by Manheim using either zip ties or bumper clips. Mr. Burkhart further testified that had he been aware of the bumper's reattachment he would have taken steps to secure it to the vehicle.

It is undisputed that Manheim did not specifically inform Mr. Burkhart that the bumper had been reattached. However, photographs of the Versa's condition, including a photograph showing the Versa bumper cover completely separated from the body of the Versa and another photograph of the reattached bumper cover, were posted online for potential buyers to view and were also shown to potential buyers by video during the live auction when the Versa was sold. Mr. Burkhart testified that he acted as the buyer for Burkhart and that, prior to purchasing the Versa, while he acknowledged that he had had the opportunity to review the photographs of the vehicle, he could not recall which photographs, if any, he had actually seen.

3

After loading the Versa onto his tow truck, Mr. Burkhart transported it to Burkhart's business location in Greensburg, Indiana. At some point during the trip the bumper of the Versa dislodged from the Versa and came to rest in the eastbound left-hand travel lane of Interstate 74 situated perpendicularly to the lane markers. At approximately 2:30 p.m. on July 20, 2012, Brady Phares, who was a passenger in a car operated by Katrina Collins headed eastbound on Interstate 74 in the left-hand travel lane, was seriously injured when Collins, apparently upon seeing the Versa bumper in the roadway, swerved right to avoid hitting it, thereby colliding with a car driven by Kim Farlow. Following the impact, Collins's vehicle was propelled into and across the grassy median into westbound traffic, where it collided with a tractor-trailer driven by Thomas Coppess. Mr. Coppess, who was an employee of Barrett Trucking ("Barrett"), had been traveling westbound on Interstate 74.

As a result of the collision, Brady Phares sustained permanent serious injuries. He filed suit against Manheim in the Marion Superior Court seeking damages for his injuries. The case was removed to this Court on July 7, 2014, and Manheim filed the Motion for Summary Judgment now before us on July 27, 2015.

## Legal Analysis

### I. Standard of Review[3]

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes as to material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See *id.* at 255. However, neither the mere existence of some alleged factual dispute between the parties, *id.* at 247, nor the existence of some metaphysical doubt as to the material facts, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears

---

[3] Plaintiff cites Indiana Trial Rule 56 for the appropriate standard of review. Although courts exercising diversity jurisdiction apply the substantive law of the state in which they sit, *see Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001), it is well-settled that federal law governs the practice and procedure of the litigation. *Parker v. Heresz*, 295 F.2d 731, 733 (7th Cir. 1969). Therefore, we review this case according to Federal Rule of Civil Procedure 56.

the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Id.* at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Thus, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enter., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989). But, if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 323.

## II.    Discussion

As noted previously, "[a] federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits." *Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001). Under Indiana law, the elements of a negligence claim are as follow: (1) a duty owed to the plaintiff; (2) a breach of that duty by the defendant; and (3) the breach proximately caused the plaintiff's damages. *Bond v. Walsh & Kelly, Inc.*, 869 N.E.2d 1264, 1266 (Ind. Ct. App. 2007).

For purposes only of this summary judgment motion, Manheim does not dispute that it owed a duty to Phares regarding its sale of the Versa and that it breached that duty. See Dkt. 27 at 6. Accordingly, we can and do sidestep further discussion of those issues here. [4] Manheim contends that even if a duty to Phares is presumed and a breach of that duty also presumed, it is entitled to summary judgment because its breach was not a proximate cause of Plaintiff's injuries. More precisely, Manheim contends that the actions of Mr. Burkhart, Mr. Coppess, and Ms. Collins all were intervening and superseding causes of the accident that injured Phares and resulted in Katrina Collins's death and such relieve it of any liability.

Under Indiana law, the doctrine of intervening and superseding causation provides that, when a negligent act or omission is followed by a subsequent act or omission affecting the chain of causation, the original wrongdoer *may* be relieved of liability. *Control Techniques, Inc. v. Johnson*, 762 N.E.2d 104, 107 (Ind. 2002). Such relief from liability depends on whether the subsequent act was merely an intervening cause, or whether it was also a superseding cause of the alleged harm. Any action by someone or something other than the negligence of the original tortfeasor which affects the chain of causation is an intervening cause. A subsequent act becomes a superseding cause,

---

[4] In response to Defendants' motion for summary judgment, Plaintiff proffers lengthy sections of testimony regarding Manheim's actions and alleged negligence in this case. In reply, Defendants dispute its alleged negligence and request that we strike portions of Plaintiff's evidence. Given that Manheim has, for the purposes of this motion, admitted a breach of its duty, we have not considered Wineman's testimony regarding his allegedly negligent conduct as Manheim's agent. Likewise, we need not determine the applicability of *Downey v. Union Pacific Railroad*, 411 F.Supp.2d 977 (N.D. Ind. 2006), given that Manheim has also admitted owing a duty to Plaintiff.

releasing the original tortfeasor from liability, only when "the harm resulting from the original negligent act 'could not have reasonably been foreseen by the original negligent actor.'" *Id.* (quoting *Hooks SuperX, Inc. v. McLaughlin*, 642 N.E.2d 514, 520 (Ind. 1994)). Claiming superseding causation is simply a way of contending that the defendant's negligence was not a proximate cause of the plaintiff's alleged harm. *See Control Techniques*, 762 N.E.2d at 108 ("the [superseding] doctrine…adds nothing to the requirement of foreseeability that is not already inherent in the requirement of causation"). In comparative fault terms, Manheim is asserting that, in light of the intervening actors' conduct, it did not cause the harm that befell Phares from this accident in any way and thus Manheim should be assessed a zero share of liability. *Id.* at 109.

In its effort to prove superseding causation and avoid liability, Manheim contends that at the time of the collision, Ken Burkhart, Thomas Coppess, and their respective employers were in breach of certain statutory duties imposed by the Federal Motor Vehicle Safety Regulations. Manheim also alleges that Katrina Collins was in breach of her common law duty to "keep a proper lookout" while operating a motor vehicle on public roadways. Manheim states further that "it was impossible that Defendant could have foreseen that the negligent acts and omissions by Burkhart and Coppess would combine with the negligence of Katrina Collins in the manner that occurred on July 20, 2012." Dkt. 27 at 14.

These claims of duty and breach as to the intervening actors obscure the appropriate inquiry regarding Manheim's possible liability in two material ways.

8

First, whether the intervening actors were negligent is not determinative of whether they were superseding causes of the accident at issue. As the Indiana Court of Appeals has made clear:

> Acts of negligence need not be the sole proximate cause of the injury in order for liability to arise. *Ingersoll-Rand Corp. v. Scott*, 557 N.E.2d 679, 684 (Ind. Ct. App. 1990). If a party's negligence is *a* proximate cause of the injury, that party shall be liable for the injury. *Id.* (emphasis added). Therefore, if multiple parties owe concurrent duties to the injured party, each may be liable for breach of their respective duty. *National R.R. Passenger Corp. v. Everton by Everton*, 655 N.E.2d 360, 366 (Ind. Ct. App. 1995).

*Indian Trucking v. Harber*, 752 N.E.2d 168, 172–73 (Ind. Ct. App. 2001). Said differently, even if Burkhart, Coppess, and Collins were themselves negligent, that fact alone would not necessarily break the chain causation so as to extinguish any liability Manheim may have.

Second, for Manheim to be liable for Phares's injuries, it would not need to have foreseen each intervening act, omission, or combination thereof occurring on July 20, 2012. A superseding cause is one that "interrupts the natural sequence of events, turns aside their course, prevents the natural and probable result of the original act or omission, and produces a different *result* that could not have been reasonably anticipated." *Harper v. Guarantee Auto Stores*, 533 N.E.2d 1258, 1264 (Ind. Ct. App. 1989) (emphasis added). Thus, the foreseeability analysis in the context proximate and superseding causation focuses on the resulting *harm* suffered by a plaintiff, not the foreseeability of each intervening *act* occurring in the chain of causation. *See e.g., Hooks v. SuperX Inc. v.*

9

*McLaughlin*, 642 N.E.2d 514, 520 (Ind. 1994) (holding that an intervening cause becomes a superseding cause only when "the *harm* resulting from the original negligent act could not have reasonably been foreseen by the original negligent actor"); *Control Techniques, Inc. v. Johnson*, 762 N.E.2d 104, 107 (Ind. 2002) ("in order to be liable for a plaintiff's injury, the *harm* must have been reasonably foreseeable by the defendant").[5]

Thus, in determining Manheim's potential liability, the sole issue for us to resolve here is whether the intervening actors (Burkhart, Coppess and Collins) each affected the chain of causation set in motion by Manheim such that the injuries sustained by Phares were no longer reasonably foreseeable consequences of Manheim's actions. *Control Techniques, Inc. v. Johnson*, 762 N.E.2d 104, 107 (Ind. 2002).

Manheim argues that in making this determination of whether the Burkhart, Coppess, and Collins were, jointly or severally, a superseding cause of the accident, we must apply the analytical framework set out by the Indiana Court of Appeals in *Scott v. Retz*, 916 N.E.2d 252 (Ind. Ct. App. 2009). In *Scott*, Defendant Retz was a nurse

---

[5] Manheim's narrow focus on the foreseeability of each intervening act as it occurred, rather than on the ultimate harm suffered by Plaintiff, reflects the approach taken by the Indiana Court of Appeals in *Bush v. Northern Indiana Pub. Serv. Co.*, 658 N.E.2d 174, 176 (Ind. Ct. App. 1997), in which the court held that a utility company owed no duty to a plaintiff who had collided with one of the company's poles given that "there [was] nothing inherent in the location of [that particular pole] to put the utility on notice that an accident might occur." However, as made clear in subsequent cases, Indiana courts distinguish between foreseeability as it relates to duty and foreseeability as it relates to proximate cause. *See Hammock v. Red Gold, Inc.*, 784 N.E.2d 495, 500 (Ind. Ct. App. 2003) (citing *Goldsberry v. Grubbs*, 672 N.E.2d 475, 478 (Ind. Ct. App. 1996) as drawing a "line of demarcation" between the two analyses of foreseeability). For purposes of duty, foreseeability is analyzed by looking forward and considering public policy. *See Id.* For purposes of proximate cause, foreseeability is analyzed looking back, with benefit of hindsight and in light of the circumstances which actually occurred. *Id.* Because Manheim has, for purposes of this motion, admitted that it owed a duty to Plaintiff, the court's analysis of foreseeability within the context of duty in *Bush* is inapplicable to our analysis of foreseeability for purposes of proximate cause.

employed the Indiana University School of Medicine who was under investigation for improperly diverting narcotics from the hospital where she worked. After injecting herself with morphine in an apparent suicide attempt, she disposed of her used and uncapped needles in a trash container located in a women's restroom in the hospital. The needles were later collected, placed in a brown paper bag, and delivered to the emergency room physician who was caring for Retz. The bag was thereafter delivered to the hospital's safety and security officer, who transported it to an offsite security dispatch center. The next day, the investigator who was assigned to the case arrived at the dispatch center and observed the brown bag with the report attached to it. As he picked up the bag to read the report, he was stuck by one of the used and uncapped needles inside the bag.

In finding that the hospital and its agents were a superseding cause of the "needle stick injury" sustained by the investigator the court considered three factors: (1) whether the intervening actors were independent from the original actor; (2) whether the intervening actors had complete control of the instrumentality causing the harm; and (3) whether the intervening actors were in a better position than the original actor to prevent the harm. *Scott*, 916 N.E.2d at 258.

Manheim concedes in urging us to apply the *Scott* analysis here, that the facts of our case do not easily align with those of the *Scott* case given the absence of a common tie between the intervening actors in the form of a patently hazardous "instrumentality of harm," i.e., the uncapped and used needles. Nevertheless, Manheim contends that the court's three-factor analysis is still applicable. While the analysis in *Scott* is somewhat

11

instructive relative to our determination of whether the actions of Burkhart constituted a
superseding cause of the collision given that Burkhart, as an intervening actor, received
the "instrumentality causing the harm" (the Versa bumper) from Manheim, we do not
view the *Scott* decision to dictate the result that Manheim asserts. To begin, the three
factors the court considered in *Scott* do not comprise an exclusive list of relevant
considerations in determining superseding and proximate causation, nor are we bound to
this formulaic three-part test. As the court stated in *Scott*, "The key to determining
whether an intervening agency has broken the original chain of causation is to determine
whether, under the circumstances, it was reasonably foreseeable that the agency would
intervene in such a way as to cause the resulting injury." 916 N.E.2d at 257 (quoting
*Hassan v. Begley*, 836 N.E.2d 303, 307 (Ind. Ct. App. 2005)).

Determining proximate and superseding causation almost always involves a fact-
intensive analysis of foreseeability which often varies on the basis of the unique
circumstances and fact presented in each case. *See Hammock v. Red Gold, Inc.*, 784
N.E.2d 495, 500 (Ind. Ct. App. 2013) ("when determining proximate cause, foreseeability
is determined based on hindsight, and accounts for the circumstances that actually
occurred.") (internal quotes omitted); *see also Control Techniques, Inc. v. Johnson*, 762
N.E.2d 104, 108 (Ind. 2002) (citing additional factors which may be considered from
Section 244 of the Restatement of the Law of Torts (Second)). "The sum of all this is
that, in order to be liable for a plaintiff's injury, the harm must have been reasonably
foreseeable by the defendant" *Id.* at 110. In the case before us, this means that, for

12

Manheim to be liable, Phares's injuries, which resulted from the dislodging of the Versa bumper onto the highway and into the pathway of another oncoming car which, in veering to avoid hitting it, collided with a third vehicle, must have been foreseeable to Manheim. This is a question of fact to be determined by a jury; it is subject to resolution on summary judgment only if all the relevant, material facts are undisputed so as to lead to a single inference or conclusion. *Scott*, 916 N.E.2d at 258.

Manheim argues that the undisputed facts in this case establish that the actions of Burkhart, Coppess, and Collins each constitutes a superseding cause of the accident causing injury to Phares. The undisputed facts, says Manheim, conclusively establish that the harm suffered by Phares was not a natural, probable, or reasonably foreseeable consequence of Manheim's admitted breach of duty; rather any one or all of the actions taken by Burkhart, Coppess, and Collins broke the chain of causation and produced an unforeseeable result to Manheim. We examine Manheim's argument in light of the actions of each alleged "superseding cause" in turn below:

### A.  Ken Burkhart

Manheim contends that "[i]t was not foreseeable (to Manheim)…that Burkhart would breach the duty to secure the Versa load to insure (sic) that no part of the Versa fell off Burkhart's flatbed tow truck during transport." Dkt. 27 at 11. As explained above, whether or not Burkhart breached its duty to secure the Versa is immaterial to our determination of whether Manheim's conduct was a proximate cause of Phares's harm. We need only decide whether Burkhart's conduct so affected the chain of causation set in

13

motion by Manheim that it rendered Phares's harm unforeseeable to Manheim. Applying the *Scott* framework, Manheim argues that Burkhart: (1) acted independently from Manheim; (2) was in complete control of the Versa and its bumper; and (3) was in a better position than Manheim to prevent the harm sustained by Plaintiff. *Scott*, 916 N.E.2d at 258.

The first two factors are undisputed. Ken Burkhart as an agent of Burkhart Automotive loaded and transported the Versa without supervision or aide from any Manheim employee, and after taking possession of the Versa, kept it under his exclusive control until the bumper fell off the car and the tow truck and came to rest on Interstate 74. Burkhart Dep. 12:4–8, 39:11–43. This is where the usefulness of the *Scott* analytical framework ends. Manheim contends that the evidence establishes that Burkhart was in a better position to prevent Phares's alleged harm, given that Burkhart knew the Versa had been involved in a prior accident and was subject to a statutory duty to secure the car onto the tow truck to prevent it from falling off. Dkt. 27 at 9.

In *Scott*, the court held that the hospital employees were in a better position to prevent the harm because, after taking complete control of the bag of uncapped needles, "the [hospital] employees were aware of the bag's contents and did not take precautions to secure the needles, despite having the opportunity to do so." 916 N.E.2d at 259. The court continued that if the hospital employees had followed the "simple protocols" regarding the proper handling of used and uncapped needles on which they had been trained, the plaintiff's injuries could have been prevented. *Id.*

14

Unlike the hospital employees in *Scott*, Burkhart was never informed that the Versa bumper had been reattached in an admittedly negligent manner. The evidence further establishes that Ken Burkhart conducted a pre-transport inspection of the vehicle, during which he noticed the windshield was loose, prompting him to strap it down. He also notice the battery was loose, prompting him to remove it and store it inside the vehicle. When he inspected the rear bumper prior to the trip to haul the car to his business premises, it seemed tightly secured to the Versa. Having not been informed of the bumper's recent reattachment to the Versa whether with zip ties or bumper clips and seeing no instability in his load, he left it unaltered. Based on these facts, a jury could conclude that Manheim, rather than Burkhart, was in the better position to prevent Phares's injuries.

Manheim argues that, even though it did not specifically inform Burkhart of the bumper's recent reattachment, Burkhart's failure to secure the entire vehicle with either netting or tarping was unforeseeable to Manheim. Phares rejoins that the evidence establishes Burkhart had been transporting vehicles from Manheim on a near weekly basis for several years, and that Burkhart's routine practice did not include covering those vehicles with netting or tarping to ensure that some part of the vehicle which might become dislodged did not fall onto the roadway. From these facts, a jury could conclude that it was reasonably foreseeable to Manheim that, based on its routine practice, Burkhart would complete an inspection of the Versa, strap down and remove noticeably loose pieces, and transport it without netting or tarping. Conversely, a jury could

15

conclude that it was *not* reasonably foreseeable to Manheim that Burkhart would fail to secure the Versa prior to transporting it.

Because the evidence leads to more than one reasonable conclusion concerning the foreseeability of Burkhart's actions to Manheim and the resulting harm to Phares, the determination of proximate and superseding causation based on Burkhart's actions must be left to the jury. *Northern Ind. Pub. Serv.*, 790 N.E.2d at 466–67.

### B. Katrina Collins

Manheim contends that "Katrina Collins was also a major superseding intervening cause of Plaintiff's alleged harm." Dkt. 43 at 13. Manheim claims that Collins breached her duty to keep a "proper lookout" while operating her motor vehicle, and that, had she kept a proper lookout, she would have been able to easily maneuver around the bumper without incident. *See Thorton v. Pender*, 377 N.E.2d 613, 617 (Ind. 1978) (defining the duty to keep proper lookout as the duty "to see that which is clearly visible or which in the exercise of due care would be visible"). Again, under Indiana's comparative fault regime, whether Collins breached her duty to keep proper lookout is immaterial to our foreseeability analysis determining Manheim's liability.[6] Manheim's reliance on the *Scott* framework is ill-suited for Collins, given that she never received or possessed control over the "instrumentality of harm" in this case.

---

[6] Manheim has conceded, for purposes of this motion, that Collins's comparative fault was not more than 50% of the total fault in this case. Dkt. 27 at 6.

Our sole concern here, therefore, is whether Collins's actions interrupted the natural chain of events and produced a new result unforeseeable to Manheim. *Bader*, 732 N.E.2d at 1218; *Harper*, 533 N.E.2d at 1264. The evidence establishes that Collins was traveling with the flow of traffic in the left-hand lane of eastbound Interstate 74 when she came upon the bumper from the Versa lying in roadway. [7] Upon seeing the bumper, she swerved right and collided with Kim Farlow's SUV, which then propelled her vehicle across the grassy median and into the path of Thomas Coppess's tractor-trailer.

In support of its argument that Collins's conduct broke the chain of causation and caused an unforeseeable result, Manheim maintains that three witnesses of the accident— Kim Farlow, Dustin Wampner, and Daniel Hoyt—all testified that the errant bumper was clearly observable as it lay in the left-hand lane of eastbound Interstate 74 just prior to the collision. Wampner Dep. 17:24–18:2, 54:12–13; Hoyt Dep. 24:22–25:1; Farlow Dep. 20:5–12. Two of the witnesses, Daniel Hoyt and Dustin Wampner, testified that they themselves were able to maneuver around the bumper without incident. Hoyt Dep. 11:11–12:11; Wampner Dep. 49:9–18. The third witness, Kim Farlow, testified that, when viewed from the right-hand travel lane, the bumper became visible at least one hundred feet ahead of him, and that he had seen the bumper before hearing the squealing

---

[7] Collins's exact speed it unclear. Dustin Wampner testified that Collins's vehicle appeared to be traveling about 65-70 miles per hour when it struck Kim Farlow. Wampner Dep. 19:15. Farlow testified that he was going about 55 miles per hour immediately prior to the accident. Farlow Dep. 14:23. John Cresap, an off duty police officer who witnessed the accident, testified that Collins was traveling near the speed limit and with the flow of traffic just prior to the accident. Cresap Dep. 60:10–61:3.

of tires, smelling the burning of rubber, and being struck by Collins's automobile. Farlow Dep. 20:5–22:8.

Manheim contends that this evidence conclusively establishes that Collins's actions of swerving to miss the bumper and colliding with Kim Farlow's vehicle interrupted the natural chain of events and from Manheim's perspective caused an unforeseeable result. But this is not the only conclusion which could be drawn from these facts. A jury could also conclude that, consistent with Daniel Hoyt's testimony, the bumper was not clearly visible in the left-hand lane until it was approximately one car-length from Collins. Hoyt. Dep. 24:2. Additionally, a jury could conclude that even if Collins could (or should) have seen the bumper lying in roadway when it was one hundred feet ahead of her due to the fact she was traveling at a speed of 55 to 70 miles per hour, her reaction of swerving to the right in an effort to avoid the obstacle was not sufficiently unforeseeable to Manheim as to break the chain of causation.

Because conflicting inferences emanate from these facts, the jury must resolve them, determining whether or not Collins's conduct disrupted the natural chain of events set in motion by Manheim and broke the chain of causation.[8] *See Northern Ind. Pub. Serv. v. Sharp*, 790 N.E.2d 462, 466 (Ind. 2003).

---

[8] We come to this conclusion without consideration of Plaintiff's expert report prepared by Matt Branch and Dr. Jack Auflick. Plaintiff has thus far failed to provide a sufficient foundation to support the report's conclusion that "depending how the bumper was orientated on the road presented an unexpected, confusing hazard with low conspicuity visual target that was hard to detect and identify which was visually challenging to oncoming drivers [and] that the presence of the hazard created high levels of stress negatively affecting Katrina Collins perceptual motor control abilities due to cognitive tunneling and regression." See Dkt. 50 at 11. Expert opinions "must consist of more than simply subjective belief or

### C.  Thomas Coppess and Barrett Trucking

Finally, Manheim asserts that Thomas Coppess (the driver of the truck which collided with Ms. Collins's vehicle) and his employer, Barrett Trucking, constituted another superseding cause of the collision, which also broke the chain of causation relieving Manheim of liability. Manheim's argument is that Coppess was driving in excess of the hours permitted under the Federal Motor Carrier Safety Regulations and that, had he followed those regulations, he would have been in Cincinnati, Ohio at the time Collins's vehicle crossed into westbound traffic on Interstate 74, thereby avoiding a collision with her altogether.

To begin, we repeat: whether Coppess and Barrett Trucking were in violation of the Federal Motor Carrier Safety Regulations is immaterial to our analysis of Manheim's liability based on its breach of its duty. We need not decide whether Coppess and Barrett Trucking were contributing proximate causes of Plaintiff's injuries, only whether, as an intervening cause, they "interrupt[ed] the natural sequence of events, turn[ed] aside their course, prevent[ed] the natural and probable result of the original act or omission, and produce[d] a different result that could not have been reasonably anticipated" by

---

unsupported speculation." *Cummins v. Lyle Indus.*, 93 F.3d 362, 368 (7th Cir. 1996). Likewise, we have not considered the report's conclusion that "the presence of the bumper in the roadway created an unexpected hazard for oncoming drivers, one that required emergency braking and steering maneuvers by drivers to avoid impact." It is well established that matters of common knowledge or common sense are not questions that need to be answered by experts. *Salem v. U.S. Lines Co.,* 370 U.S. 31, 36 (1962).

Manheim. *Harper v. Guarantee Auto Stores*, 533 N.E.2d 1258, 1264 (Ind. Ct. App. 1989).

At the moment of Coppess's intervention, Manheim had already sold the defective Versa to Burkhart; Burkhart had loaded and transported it on his tow truck onto eastbound Interstate 74; the bumper had fallen off the tow truck and come to rest in the left-hand lane; and Katrina Collins upon encountering the bumper in the roadway had swerved to avoid hitting it, collided with Kim Farlow's vehicle, crossed the grass median and entered the westbound lanes of Interstate 74 directly in the pathway of Coppess's tractor-trailer. Based on these facts, we cannot say as matter of law that Coppess's conduct interrupted the natural sequence of events and prevented the probable result thereof, or that the collision between his tractor-trailer and Collins's vehicle was as to Manheim an unforeseeable result produced by Coppess's intervention. Again, the jury must determine whether Manheim was a proximate cause of the injuries suffered by plaintiff, or whether Coppess's actions intervened to break the chain of causation and produce an unforeseeable result.

## Conclusion

Because genuine issues of material fact exist as to whether Manheim's negligent conduct was a proximate, foreseeable cause of Phares's injuries so as to make it

potentially liable for them, we hereby **DENY** Defendants' motion for summary judgment [Docket No. 42]. [9]

        IT IS SO ORDERED.


                                        Date: 2/18/2016          _____
                                                                 SARAH EVANS BARKER, JUDGE
                                                                 United States District Court
                                                                 Southern District of Indiana

---

[9] Of course, pursuant to Indiana's Comparative Fault Act, once the jury determines whether Manheim's conduct was a proximate cause of Plaintiff's injuries, liability will be apportioned among all persons whose fault caused or contributed to causing the loss according to their percentage of fault as determined by the jury. Ind. Code § 34-51-2-8; *Control Techniques, Inc. v. Johnson,* 762 N.E. 2d 104, 109 (Ind. 2002).  Nevertheless, the jury must first determine whether Manheim's actions were a proximate cause of the accident.

Distribution:

Bruce D. Jones
CRUSER MITCHELL & GASTON LLC
bjones@cmlawfirm.com

Keenan C. Fennimore
CRUSER MITCHELL & GASTON, LLC
kfennimore@cmlawfirm.com

Sally Reed Hubbard
CRUSER MITCHELL & GASTON, LLC
shubbard@cmlawfirm.com

Keith A. Gaston
CRUSER, MITCHELL & GASTON, LLC
kgaston@cmlawfirm.com

Michael W. Phelps
KEN NUNN LAW OFFICE
mikep@kennunn.com

Troy Kevin Rivera
NUNN LAW OFFICE
troyr@kennunn.com